A petition was presented in the register's court by Thomas B. Harker, son and heir-at-law of Charlotte Harker, for a review of the probate of her will, and for avoiding the grant of letters testamentary thereon to the respondent, Elliott, as her executor. On hearing this petition the register made a decree affirming the grant of letters, and *Page 52 
ordering the costs to be paid out of the estate. From this decree the petitioner appealed; and a cross appeal was also taken by the executor as to the matter of costs.
The objection to the will was, that Charlotte Harker was a feme covert, and not entitled to make a will. The answer of the executor admitted that the testatrix was a married woman, and had issue by her husband (who was still living,) of whom the petitioner was one; but set forth that her husband had been declared a lunatic, and that by certain acts of the Legislature she had been empowered to make the will in controversy.
The petition of Mrs. Harker to the Legislature, and the two acts of assembly founded thereon, were in evidence before the register; and depositions were also taken before him, showing that these acts were passed without any evidence to sustain the petition, or any notice given to the husband, Jeremiah Harker, or other person interested.
Jeremiah Harker was declared a lunatic by proceedings in chancery, on the 19th July, 1837, and Charlotte Harker, his wife, was appointed his trustee.
In January, 1835, she petitioned the Legislature of this State, setting forth, that Jeremiah Harker having become estranged from her his wife and from their home, they were living in a state of separation, the said Charlotte "occupying the station assigned her by the Hon. N. Ridgely, Chancellor of the State of Delaware, in consequence of the desertion of her said husband;" that she inherits in her own right, as a portion of the real estate of her father, two parcels of land situate, c., "which it would be for her convenience and profit to sell; one of them requiring repairs which she is unable to make, and the other a vacant lot in Wilmington, unproductive and an annual charge: that the avails of her said patrimonial estate is needful to the comfort of your petitioner and the advantage of her children, and that as her object in addressing the Legislature is one of manifest expediency; and having given public notice of her intention to make the application, she prays the Legislature to pass an act to authorize her, the said Charlotte Harker, without her husband, to hold, bargain, sell and convey her aforesaid lands, or any part thereof in fee simple; and also, to make contracts and transact business generally."
Upon this petition the following act was passed, on the 16th January, 1835:
"An act for the relief of Charlotte Harker, wife of Jeremiah Harker."
Be it enacted, c. "That Charlotte Harker of Brandywine hundred, *Page 53 
in New Castle county, wife of Jeremiah Harker, late of the game hundred, being deserted by her said husband, shall have power, without her said husband, to hold, bargain, sell and convey, in fee simple or otherwise, all the lands, tenements and hereditaments, belonging to her in her own right, and to receive the rents, profits and purchase money thereof, and her deed conveying the said lands, tenements and hereditaments, or any part thereof, executed by her without her husband, and her receipt without her husband, shall be valid and effectual in the same manner and as fully to all intents, as if she were sole and unmarried: and the said Jeremiah Harker shall not intermeddle with nor have any right, claim, or demand to such lands, tenements and hereditaments, or the rents, profits or purchase money thereof. And furthermore, that the said Charlotte Harker shall have ability, notwithstanding her marriage, to make contracts and transact business, binding herself in the same manner as if she were sole and unmarried."
This act not having been recorded within the time required by law became void; and on, the application of Mrs. Harker, it was revived by another act of assembly passed the 4th February, 1827, as follows: —
 "An act to revive and continue in force an act entitled "An act for the relief of Charlotte Harker.'"
"Whereas, it appears that an act of the General Assembly of this State was passed at the general session of the Legislature, on the 16th January, 1835, for the relief of Charlotte Harker: And whereas, the benefits of the said law are lost to the said Charlotte Harker by her neglecting to have the same recorded within one year after the passing thereof, agreeably to the act of assembly, in such case made and provided."
Sec. 1. Be it enacted, c., "That it shall and may be lawful for the said Charlotte Harker to have entered on record, within one year after the passage of this act, in the office for recording of deeds at New Castle, in and for the county of New Castle, the act entitled "An act for the relief of Charlotte Harker," passed at Dover, on the 16th January, 1835; and the recorder of deeds in and for said county, is hereby authorized and empowered to enter the said act on record, and when so entered as aforesaid, the said act shall have the same force and effect, to all intents and purposes, as if recorded within the time specified by law for recording private acts."
Charlotte Harker did not record either of these acts in her lifetime. She made her will on the 31st July, 1837, and died on 3d *Page 54 
August following. The acts of assembly were recorded on 31st August, 1837, by Mrs. Harker's executor, and the will was proved on 15th September, 1837.
On these facts Rogers, for the heir-at-law, argued that the act of 1835, was unconstitutional and void: 1st. For want of power in the Legislature to pass such a law. No State shall pass any law impairing the obligation of contracts. (Const. U. S., Art. 1,sec. 10.) No person shall be deprived of life, liberty orproperty, without due process of law. Id. Art. 5;Amended Const. Del. Art. 1, sees. 1, 8. 3 vol.Federalist p. 13, Nos. 48, 49, p. 277; Sergeant onConst, law, 362-6; 1 Bald. Rep.; Bonaparte's ease, 4Wheat. 629, 696, Dartmouth College case; 1 Kent Com.
417: 2 Dallas Rep. 304. The Legislature cannot take private property even for public use, without just compensation. This property belonged to the husband; was vested in him by the marriage contract, he being tenant by curtesy initiate, having children born at the time, and the Legislature undertook to divest it without his consent; without a jury; without evidence; without even notice to him. It was not a legislative but a judicial act. 2d. The condition of the law not being complied with, the law itself never existed. Mrs. H. never had it recorded. The general law requires the recording of private acts within the year. (Digest 32.) For want of this the first act became void. A second act was passed to revive it, which gave the power of recording specially to Charlotte Harker. The power was to her personally. It depended entirely on her consent, whether the act should have a legal existence or should become void.She never did record it; and we contend that her executor could not. It is a question of power, involving consent; and where the execution of a power requires the consent of a person; that, like every other condition, must be strictly complied with. (Prec.Chy. 452, Simpson vs. Hornsby.)
If the person whose consent to the execution of a power die before its execution, the power is gone. (Dyer 219,Dan vs. Annas.) The power cannot be devolved on another. Even circumstances that are unimportant, except as they are directed by the creator of the power, must be strictly complied with, and asubstitution cannot be allowed. (3 East 410.) So if a thing be directed to be done by writing, it cannot be done by parol. So if a deed is to be enrolled, it must be enrolled. (2 P.Wms. 506.) If a thing is to be done by instrument, under seal, it must be so done. (1 Vernon 340, 1 Rep. 173, Bigges'case.) 3. The power delegated to Charlotte Harker was to be done by deed, and the authorities cited on the other point apply *Page 55 
to this. The petition of Charlotte Harker to the Legislature was for power to dispose of land, which required a deed. The act grants the power to convey by deed and not by will. This power could not be executed, except by deed. All the acts authorized to be done by Charlotte Harker were to be done in her lifetime:
"to hold, enjoy, receive rents, bargain, sell andconvey" — how? by deed: "to make contracts and transact business" — how? inter vivos — during her life. Such a power then could not be executed by will. Where a particular instrument is required, as a deed or will, the power cannot be legally exercised in any other manner. If a deed is expressly required, the power cannot be executed by will. A will, though under seal, cannot be considered a deed for this purpose. The word deed has a technical signification — an instrument to take effect in the lifetime of the party. (Sugden on Powers 260; 15 Law Lib. 139,sec. 2. 3, pp. 141, 144.) It was not the intention of the legislature to give to Mrs. Harker the right of disposing of this property by will. Widely different is such a power from the power of selling and conveying by deed. In such a sale the proceeds would still go to her heirs, according to the law. The operation, of the will is to defeat all the interest of heirs.
Bayard, contra, declining to argue the constitutional question as to the power of the legislature to pass this act, assumed the position that Thomas B. Harker was a mere volunteer, and had no right to object to it. He had no interest vested at the time of passing the law, and never since. If the law was a violation of Jeremiah Harker's vested rights, that question may be tried in an ejectment by him. But the court will not on the trial of a question of will or no will, try the constitutionality of a law objected to on the ground of its violating interests of a person not a party to this proceeding. A party has no right to deny the constitutionality of a law, whose rights are not affected by it. (Cowen's Rep.)
Thomas Harker's rights are not affected by this law. Its only effect was to divest the life estate of Jeremiah Harker. No other person's rights were affected. During his lifetime he alone was interested to deny the constitutional efficiency of this law; at his death the property belonged to the wife (it was her maiden property) and she had the right to will it. It was perfectly competent for the legislature to authorize Mrs. Harker to dispose of her remainder by will during her husband's life. Such a law violates no contract, and divests no interest. She had no heirs at the time the law was passed, whose interests could be divested, because no one has heirs whilst living. *Page 56 
The Legislature may pass a law directing the course of descent in a particular case different from the general law. No contract is violated and no interest is divested. Neither is the question arising under the constitution of the United States, as to a violation of the marriage contract, applicable to this case, because no right acquired by the marriage was affected as it respects the party excepting here. 2. "Was the power of recording this act personal to Mrs. Harker? The general law requires a private act to be recorded by the party in whose favor it is granted within one year. The object of the supplement was to extend that time; and any person claiming an interest under the original law, could have it recorded. The power was not personal to Mrs. H.; not the case of executing a naked power. The intention was merely to extend the time to all persons interested under the first law. As to her consent, the will made under it shows her consent, if that was necessary, which it would not be as it regards the interest of others. Suppose Charlotte Harker had sold the property and died without recording the law, would not the purchaser have had the right to record it within the year: and would not a court of equity require her to record daring her lifetime, or cause it to be recorded after her death? Such a construction ought to be given to the act as will not defeat, but carry out its intention. The law was operative from its passage; — was only to become void by the failure to record. The acts of Mrs. Harker were lawful in the mean time. Shall, then, all her contracts be dependent on her own pleasure? or shall the construction be that the right of recording the law extends to all persons representing her, or standing in her position as to interest. As to the proof of the mode of passing the law by the Legislature, that it was done without evidence, the testimony taken before the register was all irregular, and protested against at the time; it will not for a moment be looked at by this court. The Legislature are the sole judges of their reasons of legislation. The power alone is subject to the review of this court. As well might the court be called on to try the legality of an act of incorporation passed by two-thirds, on the ground that the members or a part of them were bribed. If these laws are constitutional in themselves, and passed with proper authority, they must be taken to have been passed on good and sufficient reasons, and in proper form. 3. That a power to be performed by deed must be so performed. This assumes that the power is here required to be done by deed. On a proper construction of the act, I contend that the performance is not necessarily confined to a performance by deed. We are not *Page 57 
to look to the petition for a construction; that is not allowable. "What is the act? A quasi divorce, as to all matters except to marry again. The recital of the act states a case authorizing a divorce — desertion; that must be taken to be so, as this court cannot inquire into it; then the act gives power to hold, bargain, sell and convey in fee simple or otherwise, all her lands; to receive the rents, profits and purchase money thereof, and generally to make contracts and transact business, notwithstanding her marriage. What was the effect of this? Supposing the power in the Legislature to divorce, how far have they gone in this act? The act gives power to transact business, c. Is not the making a will the transaction of business? It gives power to convey. No man will doubt that a will is a conveyance. The mention of a deed is not a qualification, restriction or proviso. The power is not one given to be executed in one manner, nor alone, but a general power; and the subsequent mention of a deed is only amplification unnecessary in itself, and not intended to be restrictive. It is not the grant of a power; but the removal of a disability which remits Mrs. Harker to her original rights over her own property.
Wales, in reply. — The respondent's argument seeks to avoid all the points made by us, by showing 1st. That the appellant has no interest authorizing him to make objections to the act of assembly. To this there are two answers: — 1st. This objection was not taken below; and this has been held a full answer; and 2d. Thomas B. Harker is interested. The constitution protects not only vested interests, but any interests present or future. The act of assembly gives the right of objecting to probate of a will to any person interested. (Digest 217.) Thomas Harker is the eldest son of Jeremiah and Charlotte Harker, entitled to a share of the estate, if the will be not valid. If Thomas Harker's mother had no right to make a will, he is entitled to the property. If she had a right, it was derived under the act of assembly. Is not he interested in that act? and should he not be permitted to object to its constitutionality. It is admitted that Jeremiah Harker had such an interest as would entitle him to object to this law. What was his interest? a tenancy by the curtesy initiate; himself declared a lunatic; committed to the custody of his wife, who went to the Legislature and without his knowledge; without notice to heirs; without proof; on a false allegation, procured an act authorizing her to do certain things in relation to her property. The act itself was very unjust; but take it as it is; what does it allow Charlotte Harker to do? I do not say this court *Page 58 
will investigate the grounds or mode of passing a public law, but in a private law divesting interests — violating or dissolving contracts — taking away property — the first principles of justice require that it shall be shown to have been done with notice to the party affected, and on some proof. But there is not only this objection to the law. It was not an act of legislation, but of judicial authority. It violated a contract. The marriage gave Jeremiah Harker the right to his wife's property; to their children the right to inherit it, unless willed from them by the mother after
the death of the father. How are these rights to be destroyed, or taken away? only by judicial decision; not by an act of mere legislative authority. Admitting that the Legislature has the right to grant divorces, it is only on the ground of a breach of the contract by the party complained against. But this is not an act of divorce; an act which assumes to confer certain powers not existing at law, and which takes away rights that the law secures. The business of the judiciary is to check the Legislature in the one, and to protect individuals in the other. The act was not granted for cause authorizing a divorce. The petition stated no ground of divorce; it asserted that Jeremiah Harker was estranged from his family, and occupied the station assigned him by the Chancellor. This referred to the commission of lunacy, though obscurely, and if it was understood as it is stated in the act itself, to mean a desertion, it was a fraud on the Legislature. Does any one suppose that a temporary suspension of reason is a ground of divorce? On the contrary, it places higher and stronger claims on the other party to continue under the obligations of the contract and perform them faithfully. The act is in derogation of common law rights; breaking up contracts; taking away property; and should therefore be construed strictly. It is not an act for public benefit, or in any way beneficial, to entitle it to liberal construction. Does the act authorize her to convey lands in any other way than by deed? The Legislature had in view powers to be exercised by Charlotte Harker in her lifetime; to sell, c., and convey in fee simple or otherwise; by deed without her husband,
evidently referring to a deed technically and not a will, in which there could be no propriety in joining the husband. 3d. The act itself is void for want of execution of the power to record it. The recording is a condition and evidence of the voluntary execution of the power.
It is not the case of interests of third persons intervening; not that of a purchaser. The will is a voluntary act, not operative during her life, nor at all unless founded on the act as recorded. The making *Page 59 
the will is no conclusive evidence she meant it to become operative, as it could not become so without another act of hers, the recording the law.
The court reversed the decree of the register, on the ground that the Legislature had not by the terms of the act given to Charlotte Harker the power to dispose of her property bywill. The other points were considered, but no opinion announced in respect to them, not merely because they were unnecessary to the decision of the cause, but because the constitutional question touching the powers of the Legislature had been argued only on one side. The register's decree as to costs was affirmed. The executor was bound to prove the will and to defend it, and the estate ought to bear the costs necessarily accrued in the court below and in this court.